Argument not to exceed 15 minutes per side. Ms. Robinson, you may proceed for the appellate. Thank you. May it please the court, Mary Catherine German Robinson for the defendant. I'd like to reserve five minutes to time for rebuttal. A little background, I guess, into this case, probably necessary.    This case spawned from a service of a warrant upon a residence. Upon serving that warrant, police officers arrested four people within a residence. They did, they Mirandized all four of the residents. One, my client, declined to speak and asked for a lawyer. He was transported to the police station here in Memphis. And somewhere after arriving at the police station, before going in, the officers testified that he made a statement. And that statement was that, this is obviously after Miranda, that he had purchased a weapon off the street, which of course was used later in the trial as evidence of actual possession. I filed a motion to suppress based upon the fact that this was a post-Miranda statement under Edwards v. Arizona, it's presumed involuntary, and we did have a hearing on that. And the issues before this court on the motion to suppress are whether or not, specifically whether or not my client initiated the conversation, because otherwise it would be excluded under Edwards v. Arizona under most circumstances. And I understand the, I understand that the standard of review would be, for the findings of fact of the court, would be for clear error, of course as to whether or not what was said was an initiation on the part of my client would be reviewed de novo. And I am challenging the findings of the court, which I know makes it a very hard standard for me, but the findings of the court were that the police officers were credible, and that my client in turn initiated the conversation. And specifically I wanted this court to look at what the court relied on, and the court again found these officers to be credible, even though during the first motion to suppress hearing, when Officer Crosby testified that he had called into a communications station, Station B, that at Station B he called in a QG and received a response of W, and that my client simply blurted out that he bought the gun off the street. On cross-examination, I cross-examined Detective Crosby with the arrest record, the record of arrest which said that Detective Graves told my client that the weapon was stolen, and then my client spoke. So even just with Detective Crosby and cross-examination, we have two different scenarios. And then on reopening of the evidence, Detective Graves testified to a third scenario, that being that after hearing the communication, which was loud and clear according to everybody in the police car, that he asked Detective Crosby where the gun was stolen from, and then my client made the statement. So if we're relying on these police officers being credible, and we have three different scenarios, I question, even under the clear error standard, whether or not the finding of the court that they were credible and the finding of the court that my client initiated was in fact so. And as I bring that before the court and ask you to look at that carefully, I would point the court to a couple of things. One, under Maryland v. Schatzer, the later, I guess, in the game that communication is made, the more likely it's coercive. And the other is the statements especially of Detective, or the testimony of Detective Graves, that he had communication after Miranda all the time in front of defendants, and that his story was different from what his record of arrest was, is different from what Detective Crosby did. And I know under Haring you don't have to exclude if we get that far, but conduct like this should be deterred. And I ask the court to consider finding that the court's findings of fact were, even under a clear error standard, were not such that this was an initiation by my client. And I guess the other question is whether or not this would be harmless. And my position would be that since there was an actual possession of the weapon charged, a jury charge given, and this was a defendant's statement, which is very convincing oftentimes to jurors, at least that's what case law says, and that there's no other proof at all of actual possession, there wasn't one transaction testified to concerning my client about a gun involved with a drug sale or a gun in any of this, even the 404B or any of the testimony, the gun remained the entire time in a hiding place. So this was certainly very harmful, and I ask the court to consider it, even though I understand the standard is tough. And any questions on that I'd be happy to answer. Can you cite as much authority from the Sixth Circuit where we've reversed a credibility finding made by a district court judge? No, I can't. No, I can't. I think it's a very difficult standard. I've been doing this a while, too, and this seems a little extreme when we're talking about three different scenarios. And also we have to remind the court that it is a little difficult for Judge Anderson since he reopened the proof and didn't hear the proof the first time. Magistrate Judge Baum heard the first witness, and then Judge Anderson heard the second. So through no fault of his own, he was at a disadvantage. But, no, I agree it's a very difficult standard, but these are pretty specific circumstances, and I appreciate the court considering it. Judge Cole, I guess I'm curious to hear your thoughts on what makes this situation quote-unquote extreme. You argue that there are these sort of three versions of what occurred as Officers Crosby and Graves were conducting this check with Station B over the open mic. But one could argue that the inconsistencies as to the officer's account are pretty inconsequential, that at the end of the day it was still your client who pretty much blurted out the comments that he did and stating that he didn't know the gun was stolen, he bought it for $20. I guess I'm wondering, what is it about that exchange that would make this sort of a prohibited custodial interrogation? Sure, and what I think makes it different is that if Detective Graves actually said to him this weapon was stolen post-Miranda without giving any further warnings, it's a different scenario than if he just started talking about he stole the weapon. I mean, that's the problem I have with the way the facts, with what the judge or the court did, because if he just blurted out after hearing what I would consider to be an unintelligible conversation in code, that's one thing. If there's a generalized discussion between the officers, that's another thing. But if in fact Detective Graves actually was telling the defendant something and telling him that, actually accusing him of another crime, that's far different and far more extreme. And we just can't tell from the court just finding that the officers were credible. And it's Graves' testimony, isn't it, that it was your client who asked if the gun was stolen? Is that correct? Right, his testimony is that he and Detective Crosby were having a discussion that in fact Detective Graves asked Detective Crosby where the gun had been stolen from after everyone had heard the communication. I understand it's a tough standard, but I do find this to be somewhat unusual that we have a finding of credibility when we have quite inconsistent statements. And it matters. It matters because it appears if what the record of arrest says is correct, I think I have a very good argument that that is a functional equivalent of interrogation. And we can't get to which of those scenarios the court relied on if he just called the officers credible. Counselor Robinson, this is Judge Pearson. My question goes to the extraordinary steps I think the district judge took to confirm who said what and what the response, if any, was. Because you said, and I think the record reflects that, before the magistrate judge it was left unclear whether Chalmers volunteered a statement or whether Graves, on the other hand, had asked Crosby any question. And I think the district judge, when the judge reopened the hearing, which is not typically done, you can tell me if your experience has been different, but I think when the hearing was reopened, the judge did certainly what you said, made credibility findings, but also took the extraordinary step to clarify the sequence of events, the announcements from the dispatch operator, and what was said in response to that by the officers. But you seem to see it differently. I do. I'm not saying that the court didn't... I appreciate the court reopening the proof. I think it was necessary. And I appreciate the court going through his findings, but I just ask this court to look at what he found, and especially the determination that these officers were credible, because it's so very important to whether or not my client initiated the statement. I'm not saying that Judge Anderson did not work hard or that he didn't do everything he could to give me an opportunity to put the proof in, because he did. What I am saying is that what his conclusions were are questionable, and I'm questioning them now based on what was before the court, both before the magistrate court and then before Judge Anderson. And I guess what I'm asking is, if it's done for a third time, which is what you asked, what would be different? Because the district court essentially did it twice. Well, I think what might be different is that we would have both of these officers at the same time testifying. I think I could make it more clear to the court what the distinctions were, and I believe we might have a different result. Thank you. Thank you. Do I have any more time left before... I think your initial time has expired. Is that correct? I thought. Thank you. Okay. You'll have your rebuttal. Thank you. Mr. Coleman? Thank you, Your Honors. May it please the court. My name is Brian Coleman. I represent the United States of America. The United States respectfully asks this court to deny the appellant's motion for a new trial and affirm the rulings of the district court. In response to the first argument, and obviously there were three separate issues before the court, but I will respond to counsel's argument concerning the statement that counsel requested in her motion to suppress. I think the record was clear before the magistrate court and in the district court when the judge reopened the evidence that the manner in which the conversation occurred between the defendant and the officers in the car was as a result of conversations had between the two officers when they were checking the state of the firearm before tagging it into evidence. A response on the radio as to the signal W and subsequent to that the defendant responding to what he heard on the radio. It should be noted defense counsel speaks about codes being given over the radio and of course there was a code of signal W that was given, a classification given to firearms that are stolen. It should be noted also that the person on the radio asked if the defendant was secured for the officer's safety. Once those things were confirmed, not only did they give a signal W that the weapon was stolen, but they gave where the firearm was stolen from. And upon hearing that, it's the United States contention that the defendant became more interested in allowing the officers to know that he had not stolen the gun, but that he bought it for $20 off the street. And there was not a way that the defendant could have responded to where that gun was stolen unless he heard the same information that the officers heard. I do think that the officers gave different versions of what was heard by one another, but I actually think that makes them more credible because one, both officers are having a conversation with another, but it should be noted that the defendant only had a conversation with the defendant. And so they testified before the magistrate court, I believe it was Crosby, that he did not hear all of the conversations going back and forth. And based on the clear error standard, there has to be some deliberate, reckless, or grossly negligent conduct by the officers in the record. Excuse me? You can continue. Okay. And there's no evidence in the record to support that the officers did anything that would support this standard. Most certainly, after this evidence went in, the court was extremely careful, as Your Honor has stated, in making sure that he had an opportunity to not only hear from the officer that testified before the magistrate judge, but to reopen the hearing and speak and get testimony from Officer Grace before the case was put before the jury. He then heard Officer Grace's testimony, and then as a result of that did, in fact, then make a finding as to credibility. Unfortunately, defense counsel does not have a basis for the motion to suppress to be overturned simply because they don't like the evidence that was elicited. And even if there are different versions of events, credibility can be found by the magistrate court, and that issue as to credibility can be put in front of a jury to determine the credibility of those witnesses. And again, I would state that no deliberate or reckless conduct by the officers was present. Also, defense counsel briefed that the district court abused its discretion by admitting evidence of the defendant's 10 prior sales as intrinsic evidence. It should be noted that this evidence won to the nature of the evidence. All of those 10 prior... Excuse me. Is there a question? No, there's not. Continue. Okay, I'm sorry. That's all right. We're probably having a technical glitch. Okay. The evidence that was put before the court concerning the 10 prior sales involved a time period that was proximate in time to the arrest. It was two weeks prior. It involved the same drug, which was marijuana, the same packaging, the same residence on the Dexter Street residence where the defendant was arrested. It was also by a search warrant in the earlier... Excuse me. I'm sorry. I'm sorry. Withdrawing. Let me interrupt you with a question. I think you know the record, and so far I have no disagreement with what you've begun to list. My concerns about the 10 prior sales are that they appear to be separate from, similar to for the reasons you were listing, but separate from the charge defense of possession with intent to distribute. And for that reason, not intrinsic, but more likely than not, at best, 404B. And if you could address that directly, why those 10 prior sales are not 404B, that would be helpful. Thank you, Your Honor. I do think the court made a correct distinction in this evidence in stating that it was intrinsic. I believe it's intrinsic, one, because it involved the same parties. There was also evidence before the court that the same person who purchased the marijuana on the 10 prior occasions was present at the time of the arrest. It should be noted also that the defense asserted by the defendant was that the defendant was there randomly, victim of circumstance, and was not truly in possession of anything. And if so, it was marijuana, more so misdemeanor-level marijuana. I do think it's intrinsically involved because, one, the time period, we're not speaking about an elongated time period. We're talking about 10 times within 14 days immediately before the subject of the arrest. And, again, I've listed for the court the same factors concerning those 10 prior occasions. But I do think it's interesting, not only were the drugs the same, but we're dealing with the same parties. And one of the requirements for the proof of the United States is that we prove every element of the crime. And possession of marijuana with the intent to distribute is a key factor here. If we are required to prove that not only is the defendant in possession of marijuana, but is intending to distribute said marijuana, and there is evidence on those prior occasions with the same individuals involved, with the same drugs involved, out of the same residence that he was, in fact, distributing marijuana, that it's intrinsically involved in the count that's charged in the indictment. See, I don't agree with that. I don't think the 10 prior cells we're connected to were inextricably intertwined. They were simply other business dealings, albeit illegal business dealings, that occur approximately in time, same drug, same individuals. So I disagree with you on that. I don't disagree that that evidence might have been of the defendant's intent. And if used appropriately as intent, it may be supportable under 404B if you meet the other requirements, pretrial notice. And then, of course, there's the problem I think this case presents as to whether or not the judge made the appropriate findings of whether or not the probative value outweighed potential prejudicial effect. Can you address that for me? Let's assume that I haven't bought the intrinsic argument, but rather I'm leaning towards or at least encouraged to know more about 404B. So if you're left with just that, argue why it's 404B and address the possible failure of the trial court judge to weigh the potential prejudicial effect. Thank you, Your Honor. Your Honor, I think it's important that the judge was extremely careful in making sure that the reasons he had for allowing it to come in as extrinsic evidence were put on the record. But he also looked at the evidence under 404B also. And I believe the intent standard, which I've stated earlier, was a proper basis to bring this in. And so in the alternative, the court stated that even if it was not extrinsic evidence, under the standard of 404B, it would also have come in under the proper purpose of intent. And I believe he made a detailed record as to that. You brought up the issue concerning notice. What I will tell you is that the United States learned of the 10 prior cells in preparing the witness, Shante Montgomery, for trial. Once learning this, the United States informed the Defense Council immediately. And I would like to say that it was during a period where I believe the jury was being picked. Once that was communicated to the Defense Council, the Defense Council then had the opportunity to argue against its inclusion before the judge outside the presence of the jury. I think this is important, one, because there is no proof of any possible prejudice against the defendant because the jury has not heard the evidence. So we're not dealing with a situation where the evidence has come out first. Secondly, 404B allows for notice to be given during trial for good cause. And I would state that the good cause would be that the United States did not know about the evidence. And upon learning of the evidence, disclosed it to Defense Council and dealt with it appropriately. Not to mention the United States asked for permission to put this evidence before the jury before its inclusion. In reference to the reason being given by the judge for its inclusion, I believe that the judge made a proper basis as to its inclusion. If you look at not only the reason given to Defense Council as to its inclusion, but also the curative instruction given to the jury after Shante Montgomery testified. And if that language is looked at, one, the curative instruction tells them that this is not for any other reason other than to detail facts concerning intent. And by giving that specific instruction, I think we've covered our basis as far as the 404B inclusion of this evidence if it was deemed that the intrinsic evidence standard was not met. Mr. Coleman, this is Judge Griffin. I'm concerned about the admission into evidence of the defendant's 2005 conviction of selling marijuana, and normally we don't allow prior convictions to come into evidence. Can you address that issue and why you don't think that was error to admit the defendant's conviction three years earlier? Well, Your Honor, this court has most certainly dealt with this issue of allowing prior arrests when that prior arrest tends to go to an element of the crime that's charged in the indictment before the district court. Okay, here your brief keeps talking about arrests, but the jury was told he was convicted. Were they not? I actually believe, and I may be incorrect on this, but I don't believe the conviction was spoken about. I think it was about the arresting officer was put on the stand concerning the facts of the arrest but not concerning the conviction. Okay, I guess I'll check that. I thought the jury was actually advised of his conviction. That's what the defense alleges in that brief. So you're saying that maybe they were just told as to the facts that underlie the 2005 conviction? Yes. Okay, even that I'm having trouble with. It was three years before he was convicted. He served time in the corrections department where presumably he was corrected. That's why we send him there. You're saying because he committed a crime three years before this crime, he intended to create a crime three years later. I mean, that's your argument, that the relevance is that because he intended a crime three years before, he must have intended a crime in 2008? That most certainly is not my argument. What is the relevance? The relevance is dealing with intent to distribute. Okay, how is his intent in 2005 at all relevant to his intent in 2008?  We have a situation where the defense counsel, through the basis of her defense, is separating the defendant from the residence and arguing that he has passive presence in the residence  at the wrong place at the wrong time. And so if that is in fact the case, they are putting on a defense that attacks the element, that attacks the specific intent that's required for possession with intent to distribute. If he had sold drugs out of that house 12 years before, would that be admissible? I mean, what's the cutoff? Well, Your Honor, what I will say is, in one, 12, I believe, would have a lot more scrutiny from the district court. I will admit that. I would hope so. Absolutely. What's the cutoff? Three is okay, but if he did it five years before, that wouldn't be? Your Honor, I'm going by the precedent of the court. This court has affirmed in United States v. Jones, an eight-year-old drug offense under 404B evidence, under United States v. Matthews, an eight-year-old drug sale for 404B evidence, and collecting cases involving even older convictions in that instance, and that's a 2006 case in the Sixth Circuit. There's a long line of cases that is much older than the three years in this instance where this court has allowed evidence, specifically allowing evidence when it has to do with an element of the crime. I'm not sure I have. I mean, the inference here is that he did it before, he likely did it again, and that is what 404B prohibits. To me, that's the inference you want the jury to draw. Your Honor, I would disagree. Most certainly it's not, because that would be prejudicial and it would fail the balancing test. We most certainly didn't want to say because on a prior occasion the defendant is predisposed to commit crimes later in time. That's basically the argument. His intent three years before can be, we can infer that he has the same intent in 2008 that he had in 2005 because he's a bad person and he has the propensity to do this. Well, Your Honor, I would state a very, very recent case that this court has dealt with, United States v. Roderick Ray. In this case, forgive me for bringing it up at this time, but this case was decided since the filing to the brief in this case. Dealt with this actual issue and in allowing prior acts of evidence, specifically prior drug sales under 404B when intent is the given reason under 404B to prove intent to distribute. In that case, I believe the drug in itself was crack cocaine and the court dealt with that very issue in allowing prior sales to come in to prove intent. Specifically, the United States is arguing that for the purpose of intent and specifically because intent is required in the current indictment to show not just that he possessed it, but that he intended to possess it with the intent to distribute. It's not simply to show that he's guilty earlier in time and now that he's guilty now, but the fact that if a defense is brought forward that he is not distributing drugs and there was another case where he is in fact distributing drugs from the same residence, same drug, same manner in which it's distributed, this court has allowed that evidence to come in. I do share the same concern that you have concerning the cutoff of time, but I think we have precedent to deal with what is allowed and what is troublesome to the court as far as the timing is concerned. Thank you, Judge Coleman. Judge Cole, your time has expired. Is the Gray case, do you know, published by the court or is it an unpublished case? The Ray case, excuse me. It's Roderick Ray. Ray? Oh, it's Ray? Yes, Roderick Ray. And it was before Judge Boggs, Sutton, and Cleland. And do you know whether that case was published? We can check. I don't think it's published, but it's number 12-6180. And the date... We'll find it if you don't have it. Okay, but it was literally decided in the last month. Okay. Thank you. Ms. German-Robinson, you have some rebuttal time. Thank you very much, and I'll try to be brief. The thing that concerns me with reference to both occasions of other acts evidence, whether it's 404B or intrinsic, I think that both the 10 prior acts and the conviction in 2005 should be subjected to 404B analysis. But in neither case did the district court judge engage in a 403 balancing test, the more probative than prejudicial. He mentioned it in one occasion, but he just didn't do the analysis. And I've asked this court to find that to be extremely problematic. It is part of the 404B analysis. Is that grounds for reversal? I mean, the trial judge should do the analysis. I don't think he can be. I think especially in a situation like this where we might run into a case, kind of like the Brian Bell case, where we're talking about a whole lot of additional evidence, and without that balancing test, what's before the court is that this is as to intent. And if I can quote from the United States v. Brian Bell, but it says here, by directing the jury to consider these acts for the purpose of ascertaining Bell's intent, the court implicitly was approving the kind of reasoning which would suggest that because Bell was a drug distributor in the past, the jury should consider him to have distributed drugs in the present case. I'm not saying that we're exactly on point with Brian Bell, but it is a danger. And without doing that test, we're left with that issue being open and that kind of evidence coming in. And I agree that the 2005 conviction, whether or not conviction, those words were used in oral, I'm sorry, in argument or actually in rebuttal, counsel stated that, I think it's on page ID number 1098, this is being brought in because in that case there were multiple, multiple, multiple individually wrapped marijuana bags in that situation in 2005, and he admitted to possession of all those things. It sure looks like the intention, or what the jury is going to be in danger of finding is that, well gosh, he did it, he had multiple, multiple bags then, he's a bad guy, he's a drug dealer, he doesn't have respect for the law, we don't even need to worry about the facts before it's now, we need to convict this guy. And I think that's what happened. And I think the danger of that happening is something that this court can be extremely concerned with. And if there's a question as to whether or not that is harmless or it shouldn't be ground for reversal, I mean, in this case, we, judge, district court judge relied on admission of this information in his denial of my Rule 29 motion, counsel used it in closing, and I think that the fact that it was possibly, or not potentially, but maybe likely to be used for more than just intent, and there was a strict instruction as to that, but the instruction doesn't change the fact that we've now got that information before the court, there was a lot of other information, including the very same witness on the 10 prior acts who testified that she bought from him that day and had drugs in her pocket that day, there were other individuals in there, there was paraphernalia and whatnot, and I think that it's not always going to be ground for reversal, but in a case like this, I think this court needs to take a close look at it, and it just wasn't done. Counsel, this is Judge Griffin again. Now, to answer my question, is it grounds for reversal for a district judge not to do the balancing analysis under 404B, and if it is grounds for reversal, what authority do you cite to us? Well, I'm relying on Brian Bell, but the court, I believe, did do the balancing test, and so I don't have authority for you. Okay. All right. Next question is we have a lot of cases where there will be transactional evidence introduced, where there will be controlled buys that the government and their informant or whatever will do several controlled buys, and there might be five, six, seven of them, and the defendant will be charged with the last controlled buy, but these other buys are always admitted into evidence because they're part of the transaction. How is that different? Well, first of all, do you dispute that those cases exist? And secondly, why isn't this a transactional evidence here? Because you have the same complainant doing the same buys within a two-week period involving the same defendant, the same location. How is that different than these controlled buy cases that we see all the time, and there's only one charge but several different sales? I don't think it's a lot different. Well, those are admissible, aren't they not? I think they can be admissible, and to be candid with the court, the ten prior sales, I think I have a difficult road to hoe with that. I think the purpose is probably appropriate. What I'm really concentrating or focusing on is the 2005 conviction. Okay, that's my main problem here. But if you get those ten prior sales with the complainant in as transactional evidence, isn't the evidence here overwhelming of the guilt that the defendant possessed the marijuana with the intent to distribute? That's the charge, with the intent to distribute, since he'd been distributing it ten times before this. It's stronger. We're also not just talking about a possession with intent case. We're also talking about the counts one and three, which really drive this case, which involve possession of the weapon. And since this information came in, was admitted as intent and specifically as a count two, the problem that I have and why I believe that the 403 balancing test was so very, very necessary is that there were other counts that the jury could use that evidence wrongly for. But, no, I don't disagree that I'm going to have a difficult road to hoe on the ten prior transactions. Obviously, there's multiple case law where, yes, there's a confidential informant, and I actually expected that to be the case when I originally raised the issue with the court because I had been given notice of three confidential informants, or three buys from a confidential informant, and I thought that this was going to be all about. And then on the day, while we're doing jury selection, then I got the information about the ten sales. So I had the issue with notice at that point, but I would agree probably with Mr. Coleman that notice is something that I raise and it's important, but that the court can waive that. So I don't think that's as strong. Counselor, you talked over my question, so I think we're... it's a problem with the telephone argument. My question is, is if the ten transactional sales are admissible, why wouldn't we rule that even though it was error to admit the conviction of 2005, that that error was harmless error in view of the overwhelming evidence as to possession with intent to commit to sell marijuana? Because... I hope I'm answering your question, is that if it is 404B and the court did do that analysis, I don't think we would get to... well, I'm sorry. I think that the prejudicial value would be so strong that we wouldn't have that harmless error issue, but... You always have harmless error, don't you, even if you have a 404B violation? You have to examine it. That is true. That is true. Okay. So tell me why it wouldn't be harmless error. I think there was enough other information brought out through cross-examination in the course of the trial that while that is strong evidence as to his intent, that that wouldn't necessarily carry the day in terms of what the jury made their decision based on. All right. Thank you. Okay. Well, thank you, Ms. German-Robinson and Mr. Coleman. Our time has expired. I certainly appreciate your arguments and participation by way of telephone. It's not the most perfect way of proceeding with argument, but hopefully it went as well as could be expected today. So the case will be submitted, and you may adjourn court.